UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RICHARD J. REYNOLDS,<br>    *Plaintiff*, | )<br>)<br>) |
| *vs.* | )    2:09-cv-0302-JMS-WGH<br>) |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br>    *Defendant*. | )<br>)<br>) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Defendant Michael J. Astrue, the Commissioner of the Social Security Administration (the "Commissioner"), denied Plaintiff Richard J. Reynolds' application for disability insurance benefits. Mr. Reynolds has filed this action under 42 U.S.C. § 405(g), asking the Court to review that denial. After review, the Court concludes that the denial of benefits must be vacated and this case remanded to the Commissioner for further proceedings.

### BACKGROUND

**A. Procedural History**

Mr. Reynolds filed his initial application for disability benefits on January 28, 2000, alleging disability since May 20, 1999. [R. 101.] His application was denied, and a hearing was held before Administrative Law Judge Albert J. Velasquez on February 13, 2001. [R. 373-55.] Judge Velasquez entered a decision denying benefits. [R. 55-65.] The Appeals Council issued a remand order on July 21, 2004,[1] noting that a subsequent claim filed by Mr. Reynolds on July 13, 2004 should be combined with the remanded claim. [R. 96-98.]

---

[1] The Appeals Council remanded the initial ALJ's determination because the state psychologists indicated that Mr. Reynolds has moderate mental limitations but the ALJ "did not include such limitations in the [RFC] or in his hypothetical questions to the vocational experts." [R. 97.] It is noteworthy that this is the same reason for this Court's remand, as discussed more fully herein.

- 1 -

A second hearing was held on April 8, 2005, and Judge Velasquez again entered a decision denying benefits. [R. 25-35, 756-81.] Mr. Reynolds appealed the adverse decision, and this Court remanded the case at the Commissioner's request on March 30, 2007.[2] [R. 994.]

A third hearing was held on April 3, 2008 before Administrative Law Judge Stephen Davis (the "ALJ"). [R. 963-85.] Mr. Reynolds and vocational expert Gail Corn testified. On January 30, 2009, the ALJ denied Mr. Reynolds' request for benefits. [R. 996-1008.] The Appeals Council declined to exercise jurisdiction on July 20, 2009. [R. 986.] Mr. Reynolds now seeks this Court's review.

**B. Relevant Medical History**

Mr. Reynolds was born on February 11, 1956 and completed a college education. [R. 101, 132.] Past work includes employment as a human resources director and manager. [R. 966-97.] Mr. Reynolds divorced in 1993. [R. 741.] He was 48 years old on the date of last insured. [R. 1006.]

Mr. Reynolds suffered a mental breakdown in 1999. [R. 968.] He saw Dr. Jason Park, a psychiatrist, every two or three weeks from April 1999 through February 2000. [R. 220-25.] Dr. Park noted that Mr. Reynolds was paranoid, depressed, and had poor concentration. [R. 223, 225.] Dr. Park diagnosed Mr. Reynolds with major depression and prescribed him various medications. [R. 214, 219, 223, 225.]

In April 2000, Dr. Howard Wooden evaluated Mr. Reynolds and diagnosed him with major depression and a personality disorder. [R. 228.] Dr. Keith Neville evaluated Mr. Reynolds and concurred with Dr. Wooden's diagnosis. [R. 237, 239.] Dr. Neville also noted that Mr.

---

[2] In Mr. Reynolds' previous administrative appeal to this Court, the Commissioner moved to remand the case because the administrative record from the second hearing "contained significant inaudible portions." [Dkt. 25 in 2:06-cv-0122-LJM-WGH.]

- 2 -

Reynolds had moderate concentration, adaptation, understanding, and memory issues. [R. 230-31.]

Mr. Reynolds began seeing psychiatrist Dr. Surjit Singh in October 2000, and Dr. Singh diagnosed him with major depression. [R. 432.] The record does not contain treatment notes from January 2001 through February 2003; however, Dr. Singh's notes resume on a monthly basis in November 2007.

Mr. Reynolds has heart conditions for which he has been hospitalized and has sought treatment with varying levels of success. [R. 317-18, 344-46, 827, 954.] The history of Mr. Reynolds' heart problems, however, is not directly relevant to the issues addressed in this Order and additional pertinent information will be added as necessary.

The ALJ found that through the date of last insured, Mr. Reynolds had multiple severe impairments, including coronary heart disease, hypertension, diabetes mellitus, asthma, and depression. [R. 1001.] The ALJ determined that Mr. Reynolds has an RFC to perform sedentary work with various limitations, which prevents him from returning to his past relevant work but still enables him to perform other jobs available in the economy. [R. 1002, 1007.]

## STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.

2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, … can she perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

## DISCUSSION

Mr. Reynolds argues that the ALJ committed three errors. First, Mr. Reynolds argues that the ALJ failed to properly assess his RFC. Second, Mr. Reynolds argues that the ALJ erred by making an adverse credibility determination. Third, Mr. Reynolds argues that the ALJ erred at Step Five by failing to prove the existence of alternate work that Mr. Reynolds can perform with his RFC. Because the Court concludes that the ALJ erred by not accounting for all of Mr. Reynolds' impairments when determining the RFC, and that error affected the ALJ's determination at Step Five, the Court will address Mr. Reynolds' first and third arguments together.

## I. RFC Assessment and Performing Alternate Work

The RFC is the maximum that a claimant can still do despite his mental and physical limitations. *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008). When determining the RFC, the ALJ must take into account all medically determinable impairments, physical and mental, even those that are not considered severe. *Id.* Mental limitations must be part of the RFC assessment because "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce a claimant's ability to do past work and other work." *Id.* Limiting a claimant who has concentration impairments to simple, repetitive tasks does not adequately account for mental limitations of that nature. *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009)

After "careful consideration of the entire record," the ALJ found through the date of last insured that Mr. Reynolds

> had the residual functional capacity to perform sedentary work as defined in 20 CFT 404.1567(a) with the following restrictions: no kneeling, crawling, or climbing of ropes, ladders or scaffolds; no work at unprotected heights, around dangerous machinery, or operating a motor vehicle, or being around open flames or large bodies of water; only simple and repetitive work with no more than superficial interaction with the general public, co-workers, or supervisors.

[R. 1002.] In making this finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." [R. 1003.]

### 1. Failure to Account for Mental Limitations

Mr. Reynolds argues that the ALJ's RFC does not account for all of his mental limitations. [Dkt. 21 at 21-24.] Dr. Neville, a state agency psychiatrist, found Mr. Reynolds to be

- 5 -

"Moderately Limited"[3] in various categories, including Mr. Reynolds' ability to understand, remember, and carry out detailed directions; his ability to maintain attention and concentration; his ability to complete a normal workday; and his ability to respond appropriately to changes in the work setting. [R. 230-31.] The Commissioner does not contend that Dr. Neville's findings are contradicted by any other medical evidence suggesting a higher RFC. Indeed, the Commissioner points out that another reviewing psychologist, Dr. J. Presser, "affirmed Dr. Neville's assessment as written." [Dkt. 27 at 5 n.5.]

The Court agrees with Mr. Reynolds that the RFC does not account for the uncontradicted mental limitations identified in Dr. Neville's report. To the extent the Commissioner argues that Mr. Reynolds' limitations are encompassed by the restriction to "simple and repetitive work with no more than superficial interaction with the general public, co-workers, or supervisors," the Seventh Circuit Court of Appeals has repeatedly held that limiting a claimant to simple, routine tasks with limited interaction with others "d[oes] not adequately account for the plaintiff's medical limitations, including an impairment in concentration." *See Stewart*, 561 F.3d at 685 ("The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position."); *see also* 1985 SSR LEXIS 20 (SSR 1985) ("[T]he skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

---

[3] The limitation options on the form Dr. Neville filled out are "No Evidence of Limitation," "Not Significantly Limited," "Moderately Limited," or "Markedly Limited." [R. 230-31.] As the Commissioner points out, a rating of "Moderately Limited" equates to "often." [Dkt. 27 at 5 n. 4.]

Additionally, the ALJ's RFC does not account for the undisputed evidence in Mr. Neville's report that Mr. Reynolds' limitations moderately affect his ability to complete a normal workday without interruptions from psychologically-based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 231.]

### 2. Failure to Account for Asthma

Mr. Reynolds also argues that the ALJ erred by failing to account for physical limitations from his asthma. [Dkt. 21 at 24.] The Commissioner argues that the ALJ accounted for Mr. Reynolds' asthma by restricting him to sedentary work. [Dkt. 27 at 15.] As Mr. Reynolds points out, however, the ALJ who adjudicated his claim in 2005 accounted for his asthma by limiting his RFC to environments "relatively free of noxious fumes, gases, respiratory irritants, and extreme temperature and humidity." [Dkt. 21 at 24 (citing R. 35).]

It is unclear from the ALJ's decision whether he accounted for or rejected the evidence of Mr. Reynolds' asthma. Although the ALJ acknowledged "[t]he evidence since the original hearing in this matter indicates the claimant's general physical condition has worsened with the record documenting severe . . . asthma . . . [,]" the ALJ notes later in the same paragraph that "the claimant was strongly advised to quit smoking, which was obviously contributing to his symptoms." [R. 1004-05.] The Court is left to wonder whether the ALJ's adverse credibility determination regarding Mr. Reynolds' tobacco use explains the ALJ's failure to expressly account for Mr. Reynolds' asthma in the RFC. Maybe that is the explanation, but the Court cannot guess. The ALJ is required to build a logical bridge from the evidence to his conclusions, and this Court cannot affirm an ALJ's decision by engaging in speculation to construct that rationale. *Battle v. Astrue*, 2009 U.S. Dist. LEXIS 126937 *24-*25 (S.D. Ind. 2009). On remand, the ALJ

should account for limitations from Mr. Reynolds' asthma or clearly explain his reasons for not doing so.

### 3. Effect of the Incomplete RFC

The incomplete RFC adversely affected the hypotheticals the ALJ posed to the vocational expert at Step 5. Simply restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public does not adequately account for documented limitations of concentration, persistence, or pace. *Stewart*, 561 F.3d at 684. In many cases, the Court cannot determine how altering a hypothetical would affect the vocational expert's testimony about available work in the national economy. In this case, however, Mr. Reynolds' attorney asked the vocational expert how a "moderate limitation in completing the workday and work week due to the psychologically based symptoms" would affect the proposed hypothetical, and the vocational expert responded that it would "eliminate the . . . simple, repetitive work." [R. 982.] The RFC limits Mr. Reynolds to simple, repetitive work. Therefore, the ALJ's determination that work exists in significant numbers in the national economy that Mr. Reynolds can do is not supported by the evidence.[4]

In sum, the ALJ gave short shrift to limitations caused by Mr. Reynolds' mental impairments and did not adequately account for (or explain his rationale for disregarding) other limitations supported by the evidence. These errors require a remand. *Craft*, 539 F.3d at 675. It is unclear exactly how Mr. Reynolds' mental impairments, workday limitations, and potential asthma-related restrictions will be accounted for in the RFC on remand. Therefore, despite the vocational expert's testimony eliminating simple, repetitive work, the Court cannot definitively

---

[4] Because of the Court's conclusion that the hypotheticals posed to the vocational expert were incomplete, the Court need not address Mr. Reynolds' argument that the expert's testimony was inconsistent with the Dictionary of Occupational Titles. [Dkt. 21 at 30.]

state that there are not any jobs in the national economy that Mr. Reynolds could do once the RFC accounts for all limitations and the proper hypotheticals are posed.

Mr. Reynolds makes a cursory plea in the conclusion of his brief for this Court to award benefits instead of remanding the case to the Commissioner, but he does not argue why this case satisfies the narrow criteria for reversal. *Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) ("An award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."). Again, the Court cannot guess, but if it appears that the ALJ's errors should result in an award, the Commissioner is encouraged to expedite review on remand.

## II. Credibility Determination

Mr. Reynolds also challenges the ALJ's adverse credibility determination. Although the Court has already determined it necessary to remand this case, a review of the credibility finding is warranted.

First, Mr. Reynolds argues that the ALJ erred by concluding that there was a lack of objective evidence to document his physical limitations. [Dkt. 21 at 26.] The evidence cited by the ALJ, however, merely acknowledges undisputed evidence that Mr. Reynolds has not had heart surgery and that some tests have shown limited physical impairment. [R. 1005.] Although Mr. Reynolds argues that the SSR sets forth additional factors to be considered when there is a lack of objective evidence, he does not detail these factors or cogently argue why it was error not to follow them. [Dkt. 21 at 26-27.]

Second, Mr. Reynolds argues that it was improper for the ALJ to conclude that not requiring medication for his diabetes discredits him. [Dkt. 31 at 28.] The ALJ did not cite any evidence in the record for why Mr. Reynolds was not prescribed diabetes medication and, as the Seventh Circuit held in *Myles v. Astrue*, it is impermissible for the ALJ to "play[] doctor" and

reach his own conclusions regarding why diabetes medication was not prescribed. 582 F.3d 672, 677-78 (7th Cir. 2009). Therefore, the Court agrees with Mr. Reynolds that, based on *Myles*, the ALJ's inference is "wholly unsupported by the record." *Id.* at 678.

Third, Mr. Reynolds argues that the ALJ erred by discrediting him for allegedly continuing to smoke after being advised to quit. [Dkt. 21 at 28.] The portions of the record to which the parties direct the Court indicate that Mr. Reynolds quit smoking on October 31, 2004—before the date on which he was last insured. [R. 777-78, 828.] The ALJ, however, made contradictory statements regarding his understanding of Mr. Reynolds' tobacco use. [*Cf.* R. 1005 ("I also note the claimant was strongly advised to quit smoking, which was obviously contributing to his symptoms. . . . The claimant also has a history of asthma, but continues to smoke which argues against severe symptoms."), *with* R. 1006 ("[H]e has failed to follow the medical sources advice concerning his smoking and he reported in 2003, that he had quit a year ago.").] The ALJ does not cite to the record to support these finding (or for many of his findings, for that matter). *See Sparrow v. Astrue*, 2008 U.S. Dist. LEXIS 115174 *17 (N.D. Ind. 2008) (emphasizing that it is not a district court's "duty to scour the record to verify the ALJ's findings"). The ALJ's potentially erroneous consideration of Mr. Reynolds' continued nicotine use may be harmless error, however, because Mr. Reynolds does not dispute the ALJ's adverse credibility finding regarding his continued alcohol use. On remand, the ALJ should be sure to develop a logical bridge and cite to the record to support his findings.

## CONCLUSION

For the reasons detailed in this Order, the Court **VACATES** the ALJ's decision denying Mr. Reynolds' benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Because Mr. Reynolds' claim has been pending for so long (more than eleven years, including three hearings and two trips to this Court) and there is a sig-

nificant chance on remand that he could be awarded benefits, this Court recommends that the Commissioner expedite the claim and appoint a new ALJ who is certain to account for all of Mr. Reynolds' mental and physical limitations.

10/07/2010

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Jean C. Owen
LAW OFFICE OF JEAN C. OWEN
jeano@ssdla.net

Joseph W. Shull
jshull@pngusa.net